IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHIPEKA NELSON,                    )
                                   )
            Plaintiff,             )
                                   )
       v.                          )     1:21cv909
                                   )
CREDIT ACCEPTANCE CORPORATION,     )
                                   )
            Defendant.             )

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff submitted a pro se complaint and requests permission to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a). (Docket Entries 1, 2; see also Docket Entry 2-1 (Affidavit of Truth).) The Complaint names Credit Acceptance Corporation, an automobile finance company, as Defendant and seeks damages stemming from alleged violations of the Truth In Lending Act (TILA), 15 U.S.C. § 1501 et. seq., and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et. seq. Because Plaintiff seeks to proceed in forma pauperis, the Court must review the Complaint, and "shall dismiss the case . . . if the [C]ourt determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). For the reasons that follow, the Court will grant Plaintiff's pauper application for the limited purpose of recommending dismissal of this action.

Applicable here, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when

the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal citations omitted).[1]  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557) (internal citations omitted).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.  In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.  Similarly, a court need not accept "bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

---

1   Although the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson, 551 U.S. at 94 (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.'  But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

For the reasons that follow, the Court should dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because it fails to state a claim on which relief may be granted.

**BACKGROUND**

Attachments to the Complaint reflect the following:

In October 2019, Plaintiff entered into a contract to purchase a 2010 Honda Civic from a used car dealer. (Docket Entries 2-1, 2-2.)  As part of this purchase, Plaintiff obtained financing from Defendant, which the dealer offered. (See id.)  Plaintiff made payments to Defendant pursuant to the financing agreement for approximately one year, (Docket Entry 2-9), but later fell behind in her payments (Docket Entries 2-6, 2-7).  From May until October 2021, Plaintiff corresponded with various employees of Defendant regarding the status of her account and balance. (See Docket Entries 2-8 - 2-19.)  On October 18, 2021, Plaintiff sought to unilaterally rescind the finance agreement with Defendant. (Docket Entry 2-4.)

According to the Complaint and attached Affidavit of Truth, Defendant violated the TILA by (1) taking "[Plaintiff's] cash" (Docket Entry 2 at 4), when "[t]he finance charge does not include cash" (id.), (2) failing to include insurance in "[t]he finance charge[, which] was supposed to include insurance" (id.), which meant Plaintiff "had to purchase insurance separately" (id.), (3) "knowingly and willfully" failing to provide information in the

3

financing agreement that the TILA requires (Docket Entry 2-1 at 2), and (4) "fail[ing] to disclose [Plaintiff's] right of rescission" to the financing agreement (id.).

The Affidavit of Truth further asserts Defendant violated the FDCPA by (1) "stating that [Plaintiff] owes a debt" (id. at 3), (2) using their company logo in letters to Plaintiff (id.), (3) "communicating [with Plaintiff] without [her] prior consent" (id.), (4) "communicating with third parties without [Plaintiff's] consent" (id.), (5) "harassing" Plaintiff "about an alleged debt" (id.), (6) attacking [Plaintiff's] reputation" by "accusing [her] of owing an alleged debt" (id. at 4), (7) "using obscene and profane language against [Plaintiff's] consumer report" (id.), (8) making "false, deceptive, or misleading representations" to Plaintiff (id.), (9) "false[ly] represent[ing] . . . the character and amount of the alleged debt" (id.), (10) "false[ly] represent[ing][a] service rendered" (id.), (11) "false[ly] represent[ing] or impl[ying] that any communication is from an attorney" (id.), (12) "threatening to communicate to any person credit information" that Defendant knew "to be false" (id.), (13) using a "false representation or deceptive means to collect or attempt to collect [Plaintiff's] debt" (id. at 5), (14) "us[ing] unfair practices to attempt to collect [Plaintiff's] debt" (id.), (15) collecting an amount of Plaintiff's debt not authorized by the financing agreement (see id.), (16) "using language or [a] symbol

4

other than the [Defendant's] address on [the] envelope" (id.), (17) "fail[ing] to provide all five of the requirements pertaining to validation and verification of alleged debt" (id.), (18) "appl[ying] lawful payments to" a disputed debt (id.), and (19) "furnish[ing] deceptive forms" with knowledge that the forms "would be used to create false beliefs" (id.).

Finally, the Affidavit of Truth arguably invokes state law by accusing Defendant of (1) identity theft, in that "[Defendant] obtain[ed Plaintiff's] personal information without prior consent and created an account in [her] name without [her] knowledge" (id. at 6), as well as (2) "invasion of [Plaintiff's] personal and family privacy" (id.).

## DISCUSSION

Plaintiff's four TILA claims and approximately nineteen claims under the FDCPA all fail as a matter of law, and the Court should decline to exercise jurisdiction over any state tort claims.

### I. TILA - The Finance Charge

*a. "Cash" in the Finance Charge*

The Complaint first alleges that Defendant violated the TILA by taking "[Plaintiff's] cash" when "[t]he finance charge does not include cash." (Docket Entry 2 at 4.) The TILA requires creditors, such as Defendant, to "disclose . . . [t]he 'finance charge', not itemized, using that term." 15 U.S.C. § 1638(a)(3). The finance charge equals "the sum of all charges, payable directly

5

or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Because the finance charge represents charges "incident to the extension of credit," id., it differs from the cash price, defined as "the price at which a creditor, in the ordinary course of business, offers to sell for cash property or service that is the subject of the transaction," 12 C.F.R. § 226.2(a)(9).

Although the Complaint correctly distinguishes between the finance charge and cash price, it provides no basis for the proposition that a creditor violates the TILA by seeking repayment of the finance charge, including by taking "cash" (Docket Entry 2 at 4). (See id.)[2] As a result, the Court should dismiss the first TILA claim for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii).

---

2 In the most general sense, the cash price represents the initial principal balance of the loan, and the finance charge represents the total interest charged over the life-cycle of the loan. See 15 U.S.C. § 1605(a); 12 C.F.R. § 226.2(a)(9). Accordingly, Plaintiff's apparent suggestion that a creditor can only seek repayment of interest, but not the initial loaned sum, lacks merit. Nor could Plaintiff amend the Complaint to allege a disclosure failure on the part of Defendant, see 15 U.S.C. § 1638 (addressing "[r]equired disclosures by creditor[s]"), because Plaintiff filed her Complaint over two years after entering into the finance agreement with Defendant (see Docket Entry 2-3), beyond the limitations period for such claims, see 15 U.S.C. § 1640(3); see also Barnes v. Compass Bank, 568 F. App'x 743, 744–45 (11th Cir. 2014) (holding that, for TILA claim involving allegedly deficient disclosure, statute of limitations begins to run at time of disclosure).

### b. Insurance in the Finance Charge

The Complaint next alleges that "[t]he finance charge was suppose [sic] to include insurance, but [Plaintiff] had to purchase insurance separately." (Docket Entry 2 at 4.) Under the TILA, "[c]harges or premiums for insurance . . . against loss of or damages to property . . . shall be included in the finance charge **unless** a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended . . . ." 15 U.S.C. § 1605(c) (emphasis added).

Like the allegation regarding cash, here too the Court need not accept as true the Complaint's "bare assertion," Nemet Chevrolet, 591 F.3d at 255, that "[t]he finance charge was suppose [sic] to include insurance" (Docket Entry 2 at 4). The Complaint fails to allege that Defendant did not provide a "clear and specific statement in writing," 15 U.S.C. § 1605(c), informing Plaintiff that she must obtain insurance separately (see Docket Entry 2 at 4). And, in fact, the finance agreement attached to the Complaint did provide that clear and specific statement. (See Docket Entry 2-2 (finance agreement stating: "LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGES CAUSED TO OTHERS IS NOT INCLUDED. PROPERTY INSURANCE: You must Insure the Vehicle securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US, as more fully described on page 3.").) Accordingly, the Court should

7

dismiss the second TILA claim for failure to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. TILA – Criminal Liability

The Affidavit of Truth also alleges that Defendant violated Section 1611 of the TILA (see Docket Entry 2-1 at 2; see also Docket Entry 2 at 4 (referencing Section 1611)), which prohibits persons from "willfully and knowingly . . . fail[ing] to provide information which [the person] is required to disclose under" the TILA, 15 U.S.C. § 1611.  Section 1611 imposes criminal liability on persons found to have violated its provisions.  See id.  Criminal laws generally do not provide private causes of action.  See Doe v. Broderick, 225 F.3d 440, 447 (4th Cir. 2000) ("The Supreme Court historically has been loath to infer a private right of action from a bare criminal statute." (citing Cort v. Ash, 422 U.S. 66, 80 (1975)) (internal quotations omitted)).  "Unless there is a clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute."  Tribble v. Reedy, No. 89–6781, 888 F.2d 1337 (table), 1989 WL 126783, at *1 (4th Cir. Oct. 20, 1989) (unpublished).

The TILA does not show clear congressional intent to confer a private cause of action for violations of Section 1611.  On the contrary, given the TILA grants a civil remedy limited to certain of its provisions, see 15 U.S.C. § 1640 (establishing liability for "any creditor who fails to comply with any requirement imposed

8

under ***this part*** [Part B - §§ 1631-1651]"), principles of statutory construction dictate that Congress did not intend to confer a private cause of action for Section 1611, see Ayes v. United States Dep't of Veterans Affs., 473 F.3d 104, 110–11 (4th Cir. 2006) (discussing "time-honored maxim *expressio unius est exclusio alterius* ('the expression of one thing implies the exclusion of another')"). The Court should therefore dismiss the third TILA claim for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. TILA - Right of Rescission

The Affidavit of Truth contends Defendants committed a final violation of the TILA by "fail[ing] to disclose [Plaintiff's] right of rescission." (Docket Entry 2-1 at 2.) In certain circumstances, the TILA obligates a creditor to inform the debtor of a right to rescind: "in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as ***the principal dwelling*** of the person to whom credit is extended . . . ." 15 U.S.C. § 1635(a) (emphasis added). Principal means "[c]hief, primary, or most important." Principal, BLACK'S LAW DICTIONARY (11th ed. 2019). The relevant regulations define dwelling as "a residential structure that contains one to four units," which can include a "mobile home" if "it is used as a residence." 12 C.F.R. § 226.2(a)(19).

9

Even assuming Plaintiff's 2010 Honda Civic could qualify as a "dwelling,"[3] Plaintiff's repeated listing of various residential addresses as her mailing address (from the time she purchased the vehicle until the time she filed the instant Complaint) (see Docket Entries 2 at 1, 2-1 at 1, 2-2 at 1, 2-4 at 1, 2-5 at 1, 2-6, 2-7, 2-8, 2-9, 2-11, 2-13, 2-15, 2-16, 2-17, 2-19) precludes a finding that the Honda Civic qualified as her principal dwelling. Under the circumstances, Section 1635 of the TILA does not apply to Plaintiff's financing agreement. The Court should therefore dismiss the fourth TILA claim for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. FDCPA Claims

As described more fully above, the Affidavit of Truth additionally includes a number of FDCPA claims. The FDCPA exists to address "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692a. It establishes civil liability for

---

[3] Courts have consistently rejected this proposition. See, e.g., Davis v. Bridgecrest Acceptance Corp., No. 21-CV-0554, 2022 WL 1087207, at *3 (W.D. Mo. Apr. 11, 2022) (dismissing Section 1635 claim when "the underlying loan created a security interest in [plaintiff's] vehicle, not his primary residence"); Washington v. Pacific Credit Exch., No. 21-CV-02374, 2021 WL 5868981, at *4 (N.D. Cal. Nov. 17, 2021) (holding that Section 1635 "does not apply to the car loan at issue"), recommendation adopted, 2021 WL 5865531 (N.D. Cal. Dec. 10, 2021); Jennings v. Santander Consumer USA, Civ. Action No. 21-02468, 2021 WL 6845248, at *2 (W.D. Tenn. Sept. 21, 2021) ("It is doubtful that a standard passenger car could ever be covered by § 1635."), recommendation adopted, 2022 WL 386094 (W.D. Tenn. Feb. 8, 2022); Walker v. United States Bank, No. 21-CV-0758, 2021 WL 5701498, at *3 (N.D. Tex. Nov. 1, 2021) ("[A] Chevrolet Silverado . . . does not qualify as a "principal dwelling."), recommendation adopted, 2021 WL 5630922 (N.D. Tex. Nov. 30, 2021).

debt collectors who violate its provisions, see 15 U.S.C. § 1692k, many of which Plaintiff cited in her complaint (see Docket Entry 2-1 at 3-5). But, as the name makes clear, the FDCPA only applies to "debt collectors," statutorily-defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Moreover, the definition of debt collector expressly excludes "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt **which was originated by such person** . . . ." 15 U.S.C. § 1692a(6)(f)(ii) (emphasis added). In short, creditors who originate loans do not constitute debt collectors for purposes of the FDCPA. See id.

Defendant here originated the loan about which Plaintiff complains. (See Docket Entry 2 at 4 (stating that Plaintiff "entered into a consumer credit transaction with the defendant").) Because Defendant "collect[ed] or attempt[ed] to collect [a] debt," 15 U.S.C. § 1692a(6)(f)(ii), which Defendant "originated," id., the FDCPA excludes Defendant from the definition of debt collector. Plaintiff's claims under the FDCPA fail as a matter of law. The Court should therefore dismiss the FDCPA claims. See 28 U.S.C. § 1915(e)(2)(B)(ii).

## V. State Tort Claims

Finally, the Affidavit of Truth arguably asserts state tort claims, including identity theft and invasion of privacy. (See Docket Entry 2-1 at 6.)  As discussed above, Plaintiff's federal causes of action cannot proceed because Plaintiff has failed to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B).  As a result, the Court should dismiss without prejudice Plaintiff's state law causes of action. See 28 U.S.C. § 1367(c)(3) (permitting district courts to decline to exercise supplemental jurisdiction over state law claims when the court "has dismissed all claims over which it has original jurisdiction").

**IT IS THEREFORE ORDERED** that Plaintiff's Application to Proceed in District Court without Prepaying Fees or Costs (Docket Entry 1) is **GRANTED** for the limited purpose of considering this recommendation of dismissal.

**IT IS RECOMMENDED** that the federal claims in this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, and that the state claims therein be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

This the 20th day of October, 2022.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

12